UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO. _____

NICHOLAS LONDON, MARION LONDON, JOHN COZAD,
BIANCA COZAD, as Personal Representative of the
Estate of CHRISTOPHER COZAD, Deceased,
JESSE LANGFORD, Individually and as Personal
Representative of the Estates of ANTHONY LANGFORD,
KRISTINE LANGFORD, and WINONA LANGFORD, Deceased,
ALICE XIAOMAN ZHANG, ANNIE YONGAN LU, EAN-HUI OOI,
LAY HUI OOI, and DAVIN MARK LUKE LEUNG HO,

       Plaintiffs,

v.

ID TOURS NEW ZEALAND LIMITED,

       Defendant.

_____/

NICHOLAS LONDON, MARION LONDON, JOHN COZAD,
BIANCA COZAD, as Personal Representative of the
Estate of CHRISTOPHER COZAD, Deceased,
JESSE LANGFORD, Individually and as Personal
Representative of the Estates of ANTHONY LANGFORD,
KRISTINE LANGFORD, and WINONA LANGFORD, Deceased,
ALICE XIAOMAN ZHANG, ANNIE YONGAN LU, EAN-HUI OOI,
LAY HUI OOI, and DAVIN MARK LUKE LEUNG HO,

       Garnishors,

v.

ROYAL CARIBBEAN CRUISES LTD. d/b/a
ROYAL CARIBBEAN GROUP, CELEBRITY CRUISES INC.,
CARNIVAL CORPORATION, and NCL (BAHAMAS) LTD.,

       Garnishees.

_____/

**<u>VERIFIED COMPLAINT PRAYING FOR
ATTACHMENT PURSUANT TO SUPPLEMENTAL RULE B</u>**

Plaintiffs sue Defendant and allege:

**JURISDICTIONAL AND PRELIMINARY ALLEGATIONS**

1.   The Plaintiffs, NICHOLAS LONDON and MARION LONDON, are citizens of Australia.

2.   The Plaintiffs, JOHN COZAD and BIANCA COZAD, are citizens of Australia.  The deceased, CHRISTOPHER COZAD, was also a citizen of Australia.  The Plaintiff, BIANCA COZAD, brings this action on behalf of the Estate of CHRISTOPHER COZAD, deceased, and on behalf of all survivors who are entitled to recover, including, but not limited to, CHRISTOPHER COZAD'S wife, BIANCA COZAD, their children, Emily Cozad, L.C. and O.C.[1], and CHRISTOPHER COZAD'S mother, Beverly Cozad.

3.   The Plaintiff, JESSE LANGFORD, is a citizen of Australia, and ANTHONY LANGFORD, KRISTINE LANGFORD, and WINONA LANGFORD (deceased), were also citizens of Australia.  The Plaintiff, JESSE LANGFORD, brings this action individually and on behalf of the Estates of ANTHONY LANGFORD, KRISTINE LANGFORD, and WINONA LANGFORD, deceased, and on behalf of all survivors who are entitled to recover, including, but not limited to, their son and brother, JESSE LANGFORD.

4.   The Plaintiffs, ALICE XIAOMAN ZHANG, ANNIE YONGAN LU, EAN-HUI OOI, and LAY HUI OOI, are citizens of Australia. The Plaintiff, DAVIN MARK LUKE LEUNG HO, is a permanent resident of Australia.

5.   Defendant, ID TOURS NEW ZEALAND LIMITED (at times referred to as "ID Tours"), is a private corporation incorporated in and under the laws New Zealand and maintains its principal place of business in New Zealand.

6.   At all times material hereto, Defendant, ID Tours, personally or through an agent:

   a.   Did not have an office in this state and/or county and cannot be found within the jurisdiction of this Court;

---

[1] Initials are used to protect their identities.

b. Was engaged in business activity with Garnishees, ROYAL CARIBBEAN CRUISES LTD. ("RCCL"), CELEBRITY CRUISES INC., CARNIVAL CORPORATION and NCL (BAHAMAS) LTD., by virtue of Tour Operator and/or Shore Excursion Agreement(s); and

c. Garnishees, RCCL, CELEBRITY CRUISES INC., CARNIVAL CORPORATION and NCL (BAHAMAS) LTD., are entities with their principal place of business in Miami-Dade County Florida.

7. The Garnishees are subject to the jurisdiction of the Courts of this state.

8. The Court has admiralty subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1333.

9. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

10. At all times material hereto, ID Tours entered into contracts with Garnishees, RCCL, CELEBRITY CRUISES INC., CARNIVAL CORPORATION and NCL (BAHAMAS) LTD., wherein these cruise lines agreed to market and sell ID Tours' excursions to their passengers, and in exchange, ID Tours provided shore excursions for these cruise lines and their passengers, directly or indirectly.

11. Pursuant to the terms of the agreements, the cruise lines/Garnishees exclusively collected money for the shore excursions from the passengers and, upon the conclusion of each cruise, the cruise lines paid ID Tours its share of the proceeds.  The payments from the cruise lines to ID Tours are processed and sent from each cruise line's principal place of business in Florida.

## FACTS COMMON TO ALL COUNTS

12. At all times material hereto, RCCL owned, operated, managed, maintained and/or controlled the vessel, *Ovation of the Seas* (hereinafter "the vessel").

13. At all times material hereto, ID Tours owned, operated and/or controlled the subject excursion, which was offered, arranged for, sponsored, recommended, marketed, sold, co-operated and/or managed by RCCL.

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

14. On or about December 9, 2019, Plaintiffs were paying passengers aboard the vessel, which RCCL operated in the navigable ocean waters of the Tasman Sea and/or the Pacific Ocean.

**Promotional Material and Statements Concerning the Subject Excursion**

15. After booking the subject cruise, RCCL and/or ID Tours sent Plaintiffs promotional material, which provided Plaintiffs with information and descriptions of shore excursions, generally, including the subject excursion entitled, "White Island Volcano Experience Cruise and Guided Exploration" (hereinafter "subject excursion").

16. The promotional material RCCL and/or ID Tours sent Plaintiffs regarding the subject shore excursion (detailed below) was prepared with input and guidance from ID Tours.  For example, ID Tours provided RCCL a content worksheet that included factual data and descriptions about the subject shore excursion, which RCCL then used to base the factual material and representations in its promotional material used to market, promote and sell the shore excursion to its cruise passengers, including Plaintiffs.

17. RCCL then displayed the above and below referenced promotional material about the subject shore excursion at its shore excursion desk aboard the vessel while it sailed in navigable waters, and/or other areas of the ship during the subject cruise.  Tickets for shore excursions, including the subject excursion, were available for sale at RCCL's shore excursion desk aboard the vessel during the subject voyage.

18. With regard to the promotional material and information (including its website description shown below) for the subject shore excursion, ID Tours and RCCL only referred to White Island as "one of the most active volcanoes in the world."  The potential danger of participating in this excursion was not open or obvious to the Plaintiffs based on this description because an "active" volcano is defined as a volcano that has had at least <u>one eruption</u> during the past <u>10,000 years</u>. Unbeknownst to Plaintiffs, however, this particular volcano had erupted <u>multiple times in the past</u>

ten years, with the most recent being merely three years before the subject cruise, in 2016.  In fact, the volcano had erupted in 2016, 2013, 2012, 2000 and several times in the 1980s!  However, neither ID Tours nor RCCL notified, warned, or disclosed to Plaintiffs the history of the four eruptions since 2000.  Furthermore, the volcano was showing signs of unrest for several weeks before the subject eruption.  For instance, volcanic tremors and sulphur dioxide gas were at their highest levels since the last eruption in 2016, indicating that an eruption was more likely to occur.  In addition, a few weeks prior to the subject excursion, the volcano's alert level was raised to a level 2 (the highest level it can be when it is not erupting), indicating a heightened volcanic unrest due to the increased activity.   Additionally, two weeks prior to the subject eruption, there was a 5.9 earthquake with an epicenter located approximately 6.2 miles northeast of the volcano – a notable piece of information since seismic activity provides an increased risk of hydrothermal eruptions due to a reduction of pressure within the geothermal system.  Yet ID Tours and RCCL failed to notify passengers of (1) the numerous eruptions since 2000, (2) the heightened volcanic activity in the several weeks leading up to the excursion, (3) the significant changes in the volcanic activity that led to the increased alert level, (4) the seismic activity in the area leading to an increased risk of eruption; or (5) any indication, notification, or warning of _any_ increased danger whatsoever, or direction for passengers to refer to a specific source to obtain such information and make an informed decision for themselves.  In addition, while ID Tours and RCCL classified the excursion as "strenuous," such classification merely warned passengers to consider their "physical fitness level and medical history" when determining whether the tour was appropriate for them and countered that classification by stating, "Since the majority of the volcano sits beneath the sea, you head straight to the action without much, if any, climbing at all."  Finally, ID Tours and RCCL failed to mention or warn of _any_ risk of death or severe injuries whatsoever. Plaintiffs reviewed

this information before the subject excursion, while aboard the vessel and while it was traveling through navigable waters.

## WHITE ISLAND VOLCANO EXPERIENCE CRUISE AND GUIDED EXPLORATION

**Tauranga, New Zealand**
**December 09, 2019**

| | | | |
|---|---|---|---|
| **Code:** | TR93 | | |
| **Prices:** | Adult 258.99 / Child 210.99 USD | **Restrictions:** | N/A |
| **Duration:** | 7 hrs | **Departure Times:** | 08:00 am |

Journey to sunny Whakatane for a scenic boat ride along the picturesque Bay of Plenty to White Island for an unforgettable guided tour of New Zealand's most active volcano. In fact, White Island is one of the most active volcanoes in the world. Zodiac inflatable crafts take you from your boat directly into the crater complex. Since the majority of the volcano sits beneath the sea, you head straight to the action without much, if any, climbing at all. Gas masks/breathing apparatus helps you get up close to roaring steam vents, bubbling pits of mud, hot volcanic streams and the amazing lake of steaming acid. And the vivid hues of yellow and orange resulting from all sulfur on the island make for remarkable photos, so have your camera ready.

**Highlights:**

› White Island: Tour one of the world's most active volcanos; your tour takes you directly to the crater complex, since most of the volcano sits beneath the sea.

› Get close to the drama: Gas masks help you get near roaring steam vents, bubbling pits of mud, hot volcanic streams and the amazing lake of steaming acid.

---

**Important Notes:**

› Guests in wheelchairs and others with limited mobility should not select this tour.

› Guests must consider their physical fitness level and medical history when determining whether this tour is appropriate.

› Guests with pre-existing neck, back, knee and/or shoulder injuries, cardiac conditions, asthma, diabetes, epilepsy, other heart or respiratory conditions or any other medical condition must take particular caution when selecting a tour — particularly tours categorized as "strenuous."

› Guests who have concerns must consult with their personal physician before engaging in any activity that may be strenuous for them.

**What to Bring:**

› SeaPass card and photo identification

› Camera

› Sun protection

› Cash/credit cards

**What to Wear:**

› Walking shoes

› Hat and sunglasses

› Breathing apparatus (provided, to wear on White Island)

19. At this particular port stop for the RCCL cruise, the cruise vessel called at port in Tauranga, New Zealand. To participate in the subject shore excursion, Plaintiffs disembarked the cruise vessel, then boarded separate watercrafts, which transported them over the navigable waters of Bay of Plenty, New Zealand, to the volcanic site located on White Island, New Zealand:



20. The information and/or material ID Tours and RCCL made available and/or distributed to passengers concerning shore excursions, including the Plaintiffs concerning the subject excursion, was based on the description and/or information provided to RCCL by ID Tours. Accordingly, ID Tour undertook a duty to accurately advise passengers, including the Plaintiffs, concerning the subject excursion in order to obtain a profit, and ID Tours was required to execute that duty utilizing reasonable care under the circumstances.

**Subject Incident**

21. Relying on the safety and reputability of RCCL, as well as representations ID Tours and RCCL made regarding the subject shore excursions, Plaintiffs purchased tickets for the subject excursion directly from RCCL and/or received the excursion ticket directly from RCCL aboard

L i p c o n ,   M a r g u l i e s   &   W i n k l e m a n ,   P . A .
W W W . L I P C O N . C O M

the vessel.  In turn, RCCL received a portion of Plaintiffs' ticket price for the subject excursion and RCCL paid ID tours another portion of Plaintiffs' ticket price for the subject excursion.

22. The subject excursion constituted a maritime contract because it provided Plaintiffs with a means to travel through navigable waters, similar to a ferry. *See* paragraphs 18-19, above.

23. The Plaintiffs reviewed the information and/or material concerning the subject excursion outlined above before the subject excursion, while aboard the vessel and while it was traveling through navigable waters.  Plaintiffs relied upon those above outlined representations exclusively and to Plaintiffs' detriment in deciding to purchase the subject excursion from and to participate in same during Plaintiffs' cruise aboard the vessel.

24. Based upon the above described information and/or material concerning the subject excursion, Plaintiffs reasonably understood that the subject excursion was reasonably safe with respect to the extent of its volcanic activity at that time because otherwise it would not have been sold by RCCL to its cruise ship passengers, and Plaintiffs relied upon such understanding to Plaintiffs' detriment in deciding to purchase the subject excursion and to participate in same during Plaintiffs' cruise aboard the vessel.

25. On or about December 9, 2019, as part of Plaintiffs' cruise aboard the vessel, Plaintiffs participated in the subject excursion in New Zealand.

26. At the beginning of the excursion, and while on the separate watercrafts provided, operated and/or controlled by ID Tours that transported Plaintiffs from the cruise port stop of Tauranga and over the navigable waters of Bay of Plenty, New Zealand, to the volcanic site located on White Island, New Zealand, ID Tours' tour guides failed to adequately warn Plaintiffs of the extent of the volcanic activity associated with the White Island Volcano in the weeks leading up to and at that particular time.  This volcanic activity included, but was not limited to, acutely increased volcanic alert levels, acutely increased seismic activity, and/or corresponding acute increased risk

of eruption.  This is information ID Tours' tour guides knew or should have known as of December 9, 2019, for the reasons expressed in paragraphs 18 and 31-40, and ID Tours should have reasonably informed Plaintiffs of same on or before the boat ride on navigable waters leading to the volcano site, which ID Tours did not do.

27. In addition to reasonably warning Plaintiffs of the increased dangers, ID Tours should have also provided Plaintiffs an opportunity to decide whether or not to participate in the subject excursion based on the information as to the material increase in risk to which they were exposed, so that they were in the position to make an informed decision about participating in the subject excursion.  ID Tours was able to do so and should have done so, even while on the separate watercrafts and while on navigable waters of Bay of Plenty between Tauranga and White Island, New Zealand, because Plaintiffs would have decided not to disembark the watercraft at the volcano site, forego the excursion, and return to the cruise ship.  ID Tours, however, failed to provide Plaintiffs with such opportunity.

28. Instead, the shore excursion passengers, including Plaintiffs, were taken by ID Tours without adequate warning and/or informed consent to what appeared to be the center of the volcano.  Shortly thereafter, the volcano erupted, and as a result, Plaintiffs sustained severe burns, and some of those Plaintiffs ultimately died as a result of such burns, including CHRISTOPHER COZAD, ANTHONY LANGFORD, KRISTINE LANGFORD, and WINONA LANGFORD (at times collectively referred to as "Deceased Plaintiffs"[2]).

29. After the incident, ID Tours canceled all shore excursions to active volcanoes, including the subject excursion.  This action should have been taken before Plaintiffs' incident, especially

---

[2] The remaining Plaintiffs – NICHOLAS LONDON, MARION LONDON, JOHN COZAD, JESSE LANGFORD, ALICE XIAOMAN ZHANG, ANNIE YONGAN LU, EAN-HUI OOI, LAY HUI OOI, and DAVIN MARK LUKE LEUNG HO – are at times collectively referred to as "Injured Plaintiffs".

LIPCON, MARGULIES & WINKLEMAN, P.A.
WWW.LIPCON.COM

considering that ID Tours knew or should have known that the subject excursion was unreasonably hazardous before the subject incident occurred.

30. The subject incident which resulted in Plaintiffs' burn injuries and deaths arise from maritime torts committed by ID Tours and/or breach of a maritime contract.

a. ID Tours committed a maritime tort upon navigable water by, among other failures, failing to reasonably warn Plaintiffs of the dangerous conditions associated with the subject excursion before and/or during the transportation of the Plaintiffs over the navigable waters of Bay of Plenty, New Zealand between Tauranga, New Zealand and White Island, New Zealand, as detailed in paragraphs 18, 26 and 31-40; *see also* paragraphs 19, 23 and 26-28 as to where (upon navigable waters) and when (before the subject excursion) ID Tours committed its tortious acts.

b. In addition and/or in the alternative, ID Tours committed a maritime tort upon navigable water by, among other failures, failing to provide Plaintiffs an opportunity to make an informed decision as to whether or not to participate in the subject excursion based on the information as to the material increase in risk to which they were exposed and/or provide Plaintiffs an opportunity to not disembark the watercraft at the volcano site, forego the excursion, and return to the cruise ship before and/or during the transportation of the Plaintiffs over the navigable waters of Bay of Plenty, New Zealand between Tauranga, New Zealand and White Island, New Zealand, as detailed in paragraphs 18, 27 and 31-40; *see also* paragraphs 19, 23 and 26-28 as to where (upon navigable waters) and when (before the subject excursion) ID Tours committed its tortious acts.

c. In addition and/or in the alternative, ID Tours committed a maritime tort on land via a vessel on navigable waters by, among other failures, failing to reasonably warn Plaintiffs of the dangerous conditions associated with the subject excursion before and/or during the transportation of the Plaintiffs over the navigable waters of Bay of Plenty, New Zealand between Tauranga, New Zealand and White Island, New Zealand, as detailed in paragraphs 18, 26-27 and 31-40; *see also* paragraphs 19, 23 and 26-28 as to where (upon navigable waters) and when (before the subject excursion) ID Tours committed its tortious acts.

d. ID Tours' maritime tort was connected to traditional maritime activity. To be sure, ID Tours provided Plaintiffs with maritime navigation by transporting them over the navigable waters of Bay of Plenty, New Zealand between Tauranga, New Zealand and White Island, New Zealand, as detailed in paragraphs 18, 26 and 31-40. This action is similar to a water bus or ferry. Additionally, ID Tours provided Plaintiffs with a recreational maritime attraction in connection with cruise ship travel, which is part and parcel of modern-day maritime commerce and modern-day cruise ship travel.

e. In addition and/or in the alternative ID Tours' maritime tort caused a disruptive impact on maritime commerce. For example, following the subject volcano explosion, maritime emergency response units, similar to the U.S. Coast Guard vessel ambulances

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

and cutters, responded via watercraft to the site of the volcano explosion to render emergency aid to the volcano excursion participant victims. The scrambling of these maritime emergency response units disrupted non-emergency maritime operations near the area, disrupted local maritime commerce, navigation and travel near the affected area, and caused a strain on local maritime commerce, navigation and travel near the affected area.

f.  Lastly, ID Tours breached a maritime contract to provide a reasonably safe maritime excursion. ID Tours agreed to provide Plaintiffs a reasonably safe excursion by virtue of the promotional language used (i.e. "Get <u>close to</u> the drama…", paragraph 18) and which substantially involved travel by watercraft. ID Tours breached that contract by failing to adequately warn Plaintiffs of dangers it knew or should have known associated with the excursion and/or by failing to provide Plaintiffs with a reasonably safe excursion.

<strong><u>ID Tours' Notice of the Dangerous Excursion</u></strong>

31. At all times material hereto, ID Tours knew or should have known that the subject excursion was unreasonably hazardous and/or was not competently operated by properly trained and/or supervised persons for reasons that include, but are not limited to, (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the failure to routinely monitor volcanic alert levels and/or volcanic activity despite advertising and selling the excursion and thereby undertaking a duty to do so reasonably and sell a reasonably safe product; (3) the failure to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.

32. Prior to the subject incident, ID Tours was or should have been on notice that the excursion was not reasonably safe for passengers based on its initial approval process and/or its inspections of the subject excursion.  Specifically, in approving and offering the subject excursion to RCCL, ID Tours conducted an investigation of the excursion. In doing so, ID Tours assumed a duty to perform such investigation with reasonable care. Even a cursory look into White Island would have revealed that the volcano was active numerous times in the past ten years.  This information

should have been enough for ID Tours to realize the volcanic activity level was too high and the risk was too great to sell to the average cruise ship passenger who reasonably do not possess advanced understanding of volcanic activity markers.

33. Also prior to the subject incident, ID Tours was or should have been on notice that the excursion was not reasonably safe for passengers based on prior incidents of eruptions during volcano tours resulting in injuries to tourists.  For instance, approximately 1.5 years before the subject incident, a group of tourists were injured when a volcano in Hawaii (Kilauea) erupted during their tour.  This incident was widely reported within the cruise, touring and/or travel industry.[3]  Therefore ID Tours knew or should have known about the incident, and it should have been enough for ID Tours to realize that tours to active volcanoes were unreasonably dangerous.

34. In addition, ID Tours knew or should have known that there was a high potential for the volcano to erupt during Plaintiffs' excursion based on the increased alert level issued by New Zealand's volcano monitoring service, GeoNet, weeks before Plaintiffs' cruise.  (New Zealand's Volcanic Alert System is included below for reference.)

---

[3] https://www.nytimes.com/2018/05/28/travel/hawaii-tourism-kilauea-volcano-eruption.html

LIPCON, MARGULIES & WINKLEMAN, P.A.
WWW.LIPCON.COM

35. Specifically, on October 30, 2019 (approximately six weeks before the incident), the Volcanic Alert Level was at 1, but the Volcanic Alert Bulletin noted there was "an increase in activity…"  The bulletin went on to state that "[o]ver the last several months, [GeoNet] observed a change in the amount of SO2 gas output and level of volcanic tremor. Both show[ed] an increasing trend and [were] at the highest level since 2016[,]" which was the last time the same volcano erupted.

36. On November 18, 2019 (three weeks before the incident), the Volcanic Alert Level was raised to 2, which is the highest level it can be when it is not erupting, as demonstrated above. According to the Volcanic Alert Bulletin, "monitored parameters show[ed] further increases in activity. Hazards on the island [were] now greater than during the past few weeks…. The patterns of signals [were] similar to those through the 2011-2016 period and suggest[ed] that

Whakaari/White Island may be entering a period where eruptive activity is more likely than normal…"

37. On November 25, 2019 (two weeks before the incident), the Volcanic Alert Level remained at 2.   The Volcanic Alert Bulletin stated "no new changes [were] observed[,]" and it reiterated that "[t]he monitoring observations [were] similar to those seen in the more active 2011-2016 period and suggest[ed] that Whakaari/White Island may be entering a period where eruptive activity is more likely than normal."

38. On December 3, 2019 (less than one week before the incident), the Volcanic Alert Level remained at 2, and the Volcanic Alert Bulletin said "[m]oderate volcanic unrest continue[d] at Whakaari/White Island, with substantial gas, steam and mud bursts observed… Overall, the monitored parameters continue[d] to be in the expected range for moderate volcanic unrest and associated hazards exist[ed]. The monitoring observations bear some similarities with those seen during the 2011-2016 period when Whakaari/White Island was more active and stronger volcanic activity occurred. Observations and data to date suggest[ed] that the volcano may be entering a period where eruptive activity is more likely than normal."

39.   At all times material hereto, ID Tours knew or should have known of the above volcanic alert levels by directly monitoring the levels itself or being informed of such levels by RCCL Tours. To be sure, ID Tours is based in New Zealand, operated the subject excursion, and offered the subject shore excursion to RCCL and its passengers which took place in its own backyard. For these factual reasons, ID Tours undertook a duty to reasonably monitor the increased volcanic activity and reasonably warn Plaintiffs of same.

40. In addition to the increased alert level issued by New Zealand's volcano monitoring service, GeoNet, weeks before the subject cruise, the following additional information was readily

available to ID Tours, and ID Tours, in selling the subject excursion to RCCL and its passengers, should have been aware of the following important information regarding the volcano:

    a.  The volcano erupted in 2016, 2013, 2012, 2000 and several times in the 1980s;

    b.  The volcano was showing signs of unrest for several weeks before the subject eruption – with volcanic tremors and sulphur dioxide gas at their highest levels since the last eruption in 2016, indicating that an eruption was more likely to occur; and

    c.  Two weeks prior to the subject eruption, there was a 5.9 earthquake with an epicenter located approximately 6.2 miles northeast of the volcano – a notable piece of information since seismic activity provides an increased risk of hydrothermal eruptions due to a reduction of pressure within the geothermal system.

### COUNT I – NEGLIGENT MISREPRESENTATION AGAINST ID TOURS

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty (40) as though alleged originally herein.

41. At some time prior to the excursion, Plaintiffs reviewed the promotional material for the subject excursion provided by ID Tours (through RCCL), including the information set forth in paragraph 18 above.

42. At all times material hereto, the promotional material for the subject excursion provided by ID Tours (through RCCL), which Plaintiffs reviewed, contained the statements and descriptions set forth in paragraph 18 above.

43. At all times material hereto, the promotional material for the subject excursion provided by ID Tours (through RCCL) contained misrepresentations of material facts, including:

    a.  Misrepresenting the activity level and/or activities involved in the subject excursion as "strenuous," which merely warned passengers to consider their "physical fitness level and medical history" when determining whether the tour was appropriate for them; and failed to mention the risk of death or severe injuries, as alleged in paragraphs 18, 26 and 31-40; and/or

    b.  Implying that excursion participants would receive safety equipment (i.e. "Gas masks/breathing apparatus helps you get up close to roaring steam vents, bubbling pits of mud, hot volcanic steams and the amazing lake of steaming acid" as alleged in paragraph 18, when in actuality, the Plaintiffs were not provided with any reasonably

safe equipment or gear to prevent them from getting burned during the subject excursion; and/or

c.  Misrepresenting that participants would only "Get close to the drama: Gas masks/breathing apparatus help you get near roaring steam vents, bubbling pits of mud, hot volcanic steams and the amazing lake of steaming acid" (paragraph 18); when in reality, participants were actually exposed to a violent and deadly volcanic explosion of which ID Tours knew or should have known would occur at that time for the reasons set forth at paragraphs 18, 26 and 31-40.

44. At all times material hereto, the foregoing statements ID Tours made, caused to be made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading, through ID Tours' initial approval process and/or inspections of the subject excursion, including, but not limited to, researching the volcano, having ID Tours' representative(s) take the excursion, and conducting site inspections, which did or should have revealed: (1) the excursion could result in death or severe injuries, thereby making it more serious than "strenuous"; and (2) the excursion did not provide equipment or gear to prevent passengers from getting burned.

45. At all times material hereto, the foregoing statements ID Tours made, caused to be made and/or disseminated were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers, including Plaintiffs, to rely on the statements and act by purchasing tickets for the subject shore excursion.

46. As a result thereof, the following damages were incurred:

a.  As to the Injured Plaintiffs, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs future.

b.  As to the Deceased Plaintiffs,

    i.  The Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs future.

    ii.  The Estates of Plaintiffs incurred funeral and medical expenses.  The Estates also lost the benefit of the net accumulations that Plaintiffs would have obtained had they lived to each of their normal life expectancy.

    iii.  The survivors suffered lost support and services, funeral expenses, decedents' companionship and protection, mental pain and suffering, loss of nurture and guidance, and all other damages as allowable by law.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

### COUNT II – NEGLIGENT FAILURE TO WARN AGAINST ID TOURS

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty (40) as though alleged originally herein.

47. At all times material hereto, it was the duty of ID Tours to provide Plaintiffs with reasonable care under the circumstances.

48. At all times material hereto, it was the duty of ID Tours to warn Plaintiffs of dangers that were known, or reasonably should have been known, to ID Tours in places where ID Tours invited, sold to participate and/or reasonably expected Plaintiff to visit during the subject excursion.

49. On or about December 9, 2019, the Plaintiffs were participating in the subject excursion, which ID Tours invited and reasonably expected Plaintiffs to participate in since ID Tours sold Plaintiffs the tickets for the excursion (through RCCL).

50. On or about December 9, 2019, ID Tours and/or its agents, servants, joint venturers and/or employees breached its duty to warn the Plaintiffs through the following acts and/or omissions:

    a. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) of the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the acutely increased alert levels, the acutely increased volcanic activity and/or the acutely increased risk of eruption; and/or (3) the acutely increased risk of death or severe injuries; and/or

    b. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that ID Tours did not reasonably inspect and/or monitor the subject excursion, the volcanic alert levels, and/or the volcanic activity despite ID Tours providing, organizing, controlling and/or operating the subject excursion; and/or

    c. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that ID Tours were not adhering to highest safety standards in the industry, as evident by the hazard and/or incompetence involved with the subject excursion.

51. The above acts and/or omissions caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion because Plaintiffs would not have purchased tickets for and/or participated in the subject excursion had ID Tours and/or its agents, servants, and/or employees adequately warned and/or communicated the following to the Plaintiffs: (a) the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the acutely increased alert levels, the acutely increased volcanic activity and/or the acutely increased risk of eruption; and/or (3) the acutely increased risk of death or severe injuries; (b) that ID Tours did not reasonably inspect and/or monitor the subject excursion, the volcanic alert levels and/or the volcanic activity; (c) that ID Tours did not verify that the subject excursion is reasonably safe and/or inspected; and/or (d) that ID Tours was not adhering to highest safety standards in the industry.

52. At all times material hereto, the subject excursion was unreasonably dangerous based on (1) the excursion taking place in a volcano that was active multiple times just a few years before

the incident; (2) the failure to routinely monitor volcanic alert levels and/or volcanic activity; (3) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.

53. At all times material hereto, ID Tours knew of the foregoing dangerous conditions causing the Plaintiffs' incident and failed to warn Plaintiffs about them, or the conditions existed for a sufficient length of time so that ID Tours, in the exercise of reasonable care under the circumstances, should have learned of them and warned about them.  This knowledge was or should have been acquired through:

   a. Prior incidents of eruptions during volcano tours resulting in injuries to tourists, including, but not limited to, the 2018 Kilauea eruption that ID Tours was aware of, which did or should have revealed that the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active (like Kilauea) multiple times just a few years before the incident; and/or (2) the risk of death or severe injuries.

   b. ID Tours' initial approval process and/or inspections of the subject excursion, including, but not limited to, researching the volcano, having ID Tours' representative(s) take the excursion, conducting site inspections, which did or should have revealed: (a) the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and (3) the risk of death or severe injuries.

   c. ID Tours knew the excursion was not being canceled or postponed when the volcanic levels/activity increased because, despite the levels/activities increasing weeks before the incident and/or throughout their business relationship, ID Tours continued selling tickets (through RCCL) for tours during that time period.

54. As a result thereof, the following damages were incurred:

   a. As to the Injured Plaintiffs, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments

in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs future.

b.  As to the Deceased Plaintiffs,

   i.  The Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs future.

   ii.  The Estates of Plaintiffs incurred funeral and medical expenses.  The Estates also lost the benefit of the net accumulations that Plaintiffs would have obtained had they lived to each of their normal life expectancy.

   iii.  The survivors suffered lost support and services, funeral expenses, decedents' companionship and protection, mental pain and suffering, loss of nurture and guidance, and all other damages as allowable by law.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

## COUNT III - NEGLIGENCE AGAINST ID TOURS

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty (40) as though alleged originally herein.

55. At all times material hereto, ID Tours provided, sold, controlled, owned and/or operated the subject excursion.

56. At all times material hereto, it was the duty of ID Tours to provide Plaintiffs with reasonable care under the circumstances in so providing, selling, controlling, owning and/or operating the subject excursion.

57. At all times material hereto, the subject excursion was unreasonably dangerous, operated incompetently, and/or operated by persons improperly trained and/or improperly supervised, based on (1) the subject excursion was in a volcano that was active multiple times just a few years before

the incident; (2) the increased volcanic alert levels and/or volcanic activity; (3) the tour guide(s) on the separate watercraft(s) did not notify Plaintiffs of the acutely increased alert levels, the acutely increased volcanic activity and/or the acutely increased risk of eruption; and/or (4) ID Tours proceeded with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.

58. On or about December 9, 2019, ID Tours and/or their agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances, based on the following acts and/or omissions:

    a. Failure to provide a safe excursion; and/or

    b. Failure to adequately inspect and/or monitor the subject excursion so as to ensure that it was reasonably safe for passengers; and/or

    c. Failure to adequately inspect and/or monitor the subject excursion so as to ensure that passengers were being adequately informed and/or warned as to the volcanic alert levels and/or volcanic activity; and/or

    d. Failure to routinely inspect and/or monitor the volcanic alert levels and/or volcanic activity so as to determine whether it was reasonably safe enough for passengers to proceed with the subject excursion; and/or

    e. Failing to cancel or postpone the excursion when the alert levels, volcanic activity and/or risk of eruption increased; and/or

    f. Failure to promulgate and/or enforce adequate policies and/or procedures for ID Tours to routinely monitor volcanic alert levels and/or volcanic activity and notify RCCL and/or passengers of such levels/activity; and/or

    g. Failure to promulgate and/or enforce adequate policies and/or procedures for ID Tours to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or

    h. Failure to promulgate and/or enforce adequate policies and/or procedures for ID Tours to require that the excursion be canceled or postponed when the alert levels, volcanic activity and/or risk of eruption increased; and/or

    i. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) of the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years

before the incident; (2) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (3) the risk of death or severe injuries; and/or

j.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that RCCL does not inspect and/or monitor ID Tours, the subject excursion, the volcanic alert levels, and/or the volcanic activity, despite the subject excursion being promoted as "thoroughly reviewed" by RCCL; and/or

k.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that RCCL does not verify that the subject excursion is reasonably safe and/or inspected, despite the subject excursion being promoted as "thoroughly reviewed" by RCCL; and/or

l.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that ID Tours are not adhering to highest safety standards in the industry, as evident by the hazard and/or incompetence involved with the subject excursion; and/or

m.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that ID Tours are not subject to jurisdiction in the United States, especially when RCCL contractually requires its passengers (including the Plaintiffs) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions); and/or

n.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that ID Tours carry independent insurance from the cruise line that has lower limits and more limited coverage than RCCL's insurance; and/or

o.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) the limits of ID Tours' insurance; and/or

p.  Failure to regularly and/or adequately identify the highest safety standards in the industry for the activities offered in the subject excursion, and verify that ID Tours are adhering to such standards; and/or

q.  Failure to regularly and/or adequately review the safety record of ID Tours before recommending the subject excursion to passengers and the Plaintiffs; and/or

r.  Failure to ensure that properly trained and supervised persons operated the subject excursion; and/or

s.  Having a shore excursion that was not competently operated.

59. The above acts and/or omissions caused and/or contributed to the Plaintiffs being severely

injured while participating in the subject excursion, as follows:

a.  The subject incident would not have occurred but for the failure of ID Tours (and/or their agents, servants, and/or employees) to: (1) provide a safe excursion, operated

competently, by properly trained and supervised persons; (2) adequately inspect and/or monitor the subject excursion and/or increased volcanic risk at certain periods of time.

b. The Plaintiffs would not have purchased tickets for and/or participated in the subject excursion had ID Tours (and/or their agents, servants, and/or employees) adequately warned and/or communicated the information listed in paragraphs 18, 26-27 and 31-40.

60. At all times material hereto, ID Tours created and/or knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that ID Tours, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through:

a. The initial approval process and/or yearly inspections of ID Tours and/or the excursion, including, but not limited to, taking the excursion, conducting site inspections, and/or reviewing or enacting the tour guides' policies and procedures, which did or should have revealed the failure to: (1) provide a safe excursion, operated competently, by properly trained and supervised persons; (2) adequately inspect and/or monitor; and/or (3) adequately warn and/or communicate the information listed in paragraphs 18 and 32-38.

b. Prior incidents involving passengers injured on ID Tours' excursions that have occurred during RCCL cruises and/or that have been reported within the industry, which would have revealed the failure to: (1) provide a safe excursion, operated competently, by properly trained and supervised persons; (2) adequately inspect and/or monitor; and/or (3) adequately warn and/or communicate the information listed in paragraphs 18, 26 and 31-40.

61. As a result thereof, the following damages were incurred:

a. As to the Injured Plaintiffs, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs future.

b.  As to the Deceased Plaintiffs,

i.  The Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs future.

ii.  The Estates of Plaintiffs incurred funeral and medical expenses.  The Estates also lost the benefit of the net accumulations that Plaintiffs would have obtained had they lived to each of their normal life expectancy.

iii.  The survivors suffered lost support and services, funeral expenses, decedents' companionship and protection, mental pain and suffering, loss of nurture and guidance, and all other damages as allowable by law.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

### COUNT IV – *QUASI IN REM* ATTACHMENT AND GARNISHMENT AGAINST ID TOURS

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through forty (40) as though alleged originally herein.

62. This claim falls within the Court's admiralty and maritime subject matter jurisdiction, as it is a claim that arises from injuries to passengers during a cruise on navigable waters. *See Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV-Goodman, 2014 WL 2480612 (S.D. Fla. June 3, 2014) (finding that admiralty jurisdiction existed for cruise passengers' Rule B claim against a land-based shore excursion operator providing transportation for cruise passengers to and from an excursion).

63. The Plaintiffs filed this verified Complaint and respectfully request that this Honorable Court attach and/or garnish the belongings of ID Tours that are in the possession of Garnishees,

RCCL, CELEBRITY CRUISES INC., CARNIVAL CORPORATION and NCL (BAHAMAS) LTD., presently within this District.

64. Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure expressly states that "[i]f a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property--up to the amount sued for--in the hands of garnishees named in the process."

65. Herein, pursuant to Orders from two related cases, ID Tours cannot be found within the Southern District of Florida as it operates its business exclusively within New Zealand. *See Barham, et al. v. Royal Caribbean Cruises Ltd., et al.*, Case No. 20-cv-22627-FAM (S.D. Fla. August 23, 2021) [D.E. 65]; *see also Singh v. Royal Caribbean Cruises Ltd., et al.*, Case No. 20-cv-24987-JEM (S.D. Fla. December 10, 2021) [D.E. 62].

66. ID Tours' belongings located within this judicial district are the past, present and future earnings from its Tour Operator and/or Shore Excursion Agreement(s), and/or any other agreements with Garnishees, RCCL, CELEBRITY CRUISES INC., CARNIVAL CORPORATION and NCL (BAHAMAS) LTD. This includes, but is not limited to, all moneys owing under the aforementioned agreements from the Garnishees (directly or indirectly from any of the Garnishees' entities, affiliates and/or agents) to ID Tours, and/or any person and/or entity acting as agent and/or collecting moneys for ID Tours.

67. The amount of damages sought in this action, including unliquidated damages and attorneys' fees in this action, is an amount in excess of $150,000,000.00 United States Dollars.

LIPCON, MARGULIES & WINKLEMAN, P.A.
WWW.LIPCON.COM

**WHEREFORE**, the Plaintiffs demand for process to attach ID Tours' tangible or intangible personal property, up to the amount sued for, in the hands of the Garnishees named in the process.

Dated: December 8, 2022

Respectfully submitted,

LIPCON, MARGULIES
& WINKLEMAN, P.A.
*Attorneys for Plaintiffs*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:  */s/ Michael A. Winkleman*
**MICHAEL A. WINKLEMAN**
Florida Bar No. 36719
mwinkleman@lipcon.com
**JACQUELINE GARCELL**
Florida Bar No. 104358
jgarcell@lipcon.com
**L. ALEX PEREZ**
Florida Bar No. 125452
aperez@lipcon.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO. _____

NICHOLAS LONDON, MARION LONDON, JOHN COZAD,
BIANCA COZAD, as Personal Representative of the
Estate of CHRISTOPHER COZAD, Deceased,
JESSE LANGFORD, Individually and as Personal
Representative of the Estates of ANTHONY LANGFORD,
KRISTINE LANGFORD, and WINONA LANGFORD, Deceased,
ALICE XIAOMAN ZHANG, ANNIE YONGAN LU, EAN-HUI OOI,
LAY HUI OOI, and DAVIN MARK LUKE LEUNG HO,

       Plaintiffs,

v.

ID TOURS NEW ZEALAND LIMITED,

       Defendant.

_____/

NICHOLAS LONDON, MARION LONDON, JOHN COZAD,
BIANCA COZAD, as Personal Representative of the
Estate of CHRISTOPHER COZAD, Deceased,
JESSE LANGFORD, Individually and as Personal
Representative of the Estates of ANTHONY LANGFORD,
KRISTINE LANGFORD, and WINONA LANGFORD, Deceased,
ALICE XIAOMAN ZHANG, ANNIE YONGAN LU, EAN-HUI OOI,
LAY HUI OOI, and DAVIN MARK LUKE LEUNG HO,

       Garnishors,

v.

ROYAL CARIBBEAN CRUISES LTD. d/b/a
ROYAL CARIBBEAN GROUP, CELEBRITY CRUISES INC.,
CARNIVAL CORPORATION, and NCL (BAHAMAS) LTD.,

       Garnishees.

_____/

**<u>VERIFICATION</u>**

1.   This affidavit is executed by the undersigned in order to attach and/or garnish the belongings of Defendant, ID TOURS NEW ZEALAND LIMITED, in the above-styled cause in admiralty.

2.   The undersigned hereby certifies to the Court, the Clerk and the Marshal that the undersigned has made a diligent search and inquiry to ascertain the name and address of a person or party upon whom can be served process in the Southern District of Florida in personam which will bind Defendant, ID TOURS NEW ZEALAND LIMITED.

3.   Based upon such diligent search and inquiry, the undersigned has been unable to ascertain the name and address of any person or party within the Southern District of Florida upon whom service of process would bind Defendant, ID TOURS NEW ZEALAND LIMITED.

4.   In addition, Plaintiffs request process to attach the tangible or intangible personal property of Defendant, ID TOURS NEW ZEALAND LIMITED, up to $150,000,000.00, in the hands of the Garnishees.  To affiant's knowledge, or on information and belief, the Defendant, ID TOURS NEW ZEALAND LIMITED, cannot be found within the district, but property belonging to Defendant in the hands of the Garnishees is within this District. *See Barham, et al. v. Royal Caribbean Cruises Ltd., et al.*, Case No. 20-cv-22627-FAM (S.D. Fla. August 23, 2021) [D.E. 65]; *see also Singh v. Royal Caribbean Cruises Ltd., et al.*, Case No. 20-cv-24987-JEM (S.D. Fla. December 10, 2021) [D.E. 62].

5.   I verify under penalty of perjury that the foregoing is true and correct.

6.   The Clerk of this Court is hereby requested to issue the Maritime Summons to Show Cause Respecting Intangible Property and Summons and Process of Maritime Attachment and Garnishment and deliver it to the Marshall's office.

7.   The Marshall is hereby directed to promptly serve said Maritime Summons to Show Cause Respecting an Intangible Property and Summons and Process of Maritime Attachment and

Garnishment upon Garnishees, CARNIVAL CORPORATION, ROYAL CARIBBEAN CRUISES LTD., CELEBRITY CRUISES INC., and NCL (BAHAMAS) LTD.

### Declaration Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing verification is true and correct.

Executed on this Thursday, December 8, 2022.

_____
**JACQUELINE GARCELL**